NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION | : | |
| | : | Civ. No. 05-3460 (GEB) |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| ROBERT CHINERY, JR., TRACY A. CHINERY, and RTC RESEARCH & DEVELOPMENT, LLC, | : | |
| | : | |
| Defendants. | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion of defendant Tracy A. Chinery ("Defendant") for dismissal of the Federal Trade Commission's ("FTC") complaint pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment. The Court has read and considered all documents filed and submitted and has decided the motion based upon the parties' submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendant's motion to dismiss is denied, and the motion for summary judgment is denied without prejudice. The parties are directed to conduct discovery as outlined in the FTC's Rule 56(f) declaration, and may resubmit motions for summary judgment at the conclusion of discovery if so desired.

**I.    BACKGROUND**

This action stems from the advertising and promotion of Xenadrine EFX, a dietary supplement marketed for weight loss. Def.'s Br, at1. The following facts are taken from the FTC's

Complaint and are accepted as true for the purposes of this motion to dismiss. RTC Research & Development, LLC ("RTC") is a New Jersey limited liability company which asserts that it owned the intellectual property rights for Xenadrine EFX. Compl., ¶ 5. RTC has advertised, marketed and/or sold Xenadrine EFX to consumers throughout the United States. Id. At all times relevant to the Complaint, Robert Chinery was the President and sole shareholder of Nutraquest, Inc., previously named Cytodyne Technologies, Inc. ("Nutraquest"). Id. at ¶ 6. Robert Chinery was also the President of RTC and had a twelve and one half percent ownership interest in Cytodyne, LLC, previously named Everrich, LLC ("Cytodyne, LLC") through another limited liability company. Id. Defendant Tracy Chinery was, at all times material to the Complaint, the Secretary and the Vice-President of Nutraquest. Id. at ¶ 7. Defendant was also the managing member of and had an eighty percent ownership interest in RTC, and was the trustee of trusts that owned the remaining twenty percent. Id.

Robert Chinery, RTC, Nutraquest and Defendant have labeled, advertised, offered for sale, sold, and distributed purported weight loss products to the public, including Xenadrine EFX, a dietary supplement marketed since at least 2002. Id. at ¶ 10. Nutraquest asserts that, in January 2002, it acquired from RTC a license to market and sell Xenadrine EFX. Id. According to the Complaint, Xenadrine EFX is a tablet containing, among other ingredients, green tea extract, yerba mate, and bitter orange. Id. at ¶ 11. In 2002, sales of Xenadrine EFX exceeded $72 million, from January through May 2003 sales exceeded $28 million. Id. Nutraquest and Robert Chinery commissioned several studies of Xenadrine EFX that measured the weight of study subjects over periods ranging from two weeks to ten weeks. Id. at ¶ 12. The FTC alleges that none of these studies show substantial weight loss caused by Xenadrine EFX, subjects taking Xenadrine EFX on

average lost 1.5 pounds over ten weeks, while the control group taking a placebo lost on average 2.5 pounds over the same time period.  Id.

In May 2003, Robert Chinery and others established Cytodyne, LLC, and in the same month the purported license between Nutraquest and RTC was terminated.  Id. at ¶ 13.  Cytodyne, LLC then entered into a licensing agreement with RTC and took over the marketing and sale of Xenadrine EFX.  Id.  The license between Cytodyne, LLC and RTC includes a clause that requires Cytodyne, LLC to disclose Xenadrine EFX advertising to RTC and gives RTC the right to disapprove the advertising.  Id.  Beginning in May 2003, Cytodyne, LLC has labeled, advertised, offered for sale, sold and distributed Xenadrine EFX to the public.  Id.  From June 2003 through mid-August 2004, sales of Xenadrine EFX exceeded $61 million, and during that latter period, Cytodyne, LLC made royalty payments to RTC of over $6 million.  Id.  Defendants have advertised Xenadrine EFX through nationally disseminated television advertisements, magazine advertisements, and the www.cytodyne.com and www.xenadrine.com websites.  Id. at 14.  Magazine advertisements for Xenadrine EFX have appeared in *People*, *TV Guide*, *Cosmopolitan*, *Glamour*, *Let's Live*, *Men's Fitness*, *Women's World* and other publications.  Id.

In its Complaint, the FTC alleges that Robert Chinery, Defendant (Tracy Chinery) and RTC misled consumers with deceptive advertisements that resulted in over $160 million in sales of Xenadrine EFX.  Id. at ¶¶ 11, 13, 17-23.  The FTC's Complaint seeks a permanent injunction against Defendants and consumer redress for injury resulting from Defendants' violations of Sections 5(a) and 12 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a) and 52.

**II.     PROCEDURAL BACKGROUND**

The Court will now address the procedural history of this matter, as the case has changed significantly since the FTC filed its Complaint on July 11, 2005, and these changes impact this current motion to dismiss. On September 26, 2005, the Court referred the case mediation. (Docket No. 9). On October 27, 2005, the Court stayed further litigation in the case pending resolution of the mediation. (Docket No. 14). On December 26, 2006, the Court entered the Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief as to Robert Chinery and RTC Research & Development, LLC. ("RC/RTC Settlement," Docket No. 7). As a result, the only remaining defendant is Tracy Chinery.

On February 28, 2007, this Court entered an order vacating a stay of the action for the limited purpose of resolving Defendant's motion to dismiss. See Consent Order Vacating Stay, Exhibit A, Stipulation Regarding Litigation and Settlement Process ("Stipulation"), ¶ 6. According to the Stipulation:

> [t]he FTC and Tracy Chinery have further agreed that, solely for purposes of Tracy Chinery's Motion [the present motion to dismiss/motion for summary judgment] only, it will be assumed, but in no way conceded by Tracy Chinery or by any other party to this Stipulation, that the advertising referenced in the Complaint is actionable; and the sole issue to be heard and determined by the Court is whether Tracy Chinery, under the facts and law relating to her involvement, could be held personally and individually liable for any of that advertising.

Stipulation, ¶ 4. Further, the Stipulation states that "[t]he FTC shall have the right to move to conduct discovery in accordance with the Rules with regard to any and all factual issues raised by Tracy Chinery's Motion, and Tracy Chinery, in such event, shall have the right to conduct discovery with respect to all factual issues raised by the FTC." Id., at ¶ 6, b. The Stipulation also addresses

the appeal rights of the parties regarding this motion, specifically that all parties waive their right to appeal regardless of the disposition of the motion.  Id., at ¶ 6, c, i-ii.  If the FTC ultimately prevails, it will not recover any money from Defendant, rather, she must sign a final settlement agreement on the same terms as those previously entered by Robert Chinery and RTC.  Id., at ¶ 6, c, ii.

Defendant filed the instant motion to dismiss, or in the alternative, motion for summary judgment on March 7, 2007.  (Docket No. 19).  The FTC opposed the motion on April 16, 2007, and in addition, filed a Declaration in Support of Discovery Pursuant to Fed. R. Civ. P. 56(f), requesting that the Court continue the motion for summary judgment until the FTC can conduct and complete discovery as described in the declaration.  (Docket No. 21).  Defendant filed a reply on May 8, 2007.  (Docket No. 23).

## II. DISCUSSION

### A.  Standard for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.  Oran v. Stafford, 226 F.3d 275, 279 (3d Cir. 2000); Langford v. City of Atlantic City, 235 F.3d 845, 850 (3d Cir. 2000); Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986).  The Court may not dismiss a complaint unless plaintiff can prove no set of facts that would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir.), cert. denied, 474 U.S. 935 (1985).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Under Rule 12(b)(6), the Court must "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff. [The motion can be granted] only if no relief could be granted under any set of facts that could be proved." Turbe v. Government of the Virgin Islands, 938 F.3d 427, 428 (3d Cir. 1991)(citing Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1394-95 (3d Cir. 1991)); see also Langford, 235 F.3d at 850; Dykes v. Southeastern Pa. Transp. Auth., 68 F.3d 1564, 1565 n.1 (3d Cir. 1995), cert. denied, 517 U.S. 1142 (1996); Piecknick v. Commonwealth of Pennsylvania, 36 F.2d 1250, 1255 (3d Cir. 1994); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). A complaint may be dismissed for failure to state a claim where it appears beyond any doubt "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)(citation omitted).

A complaint should not be dismissed unless it appears beyond doubt that "the facts alleged in the complaint, even if true, fail to support the . . . claim . . ." Ransom v. Marazzo, 848 F.2d 398, 401 (3d Cir. 1988). Legal conclusions made in the guise of factual allegations, however, are given no presumption of truthfulness. Papasan v. Allain, 478 U.S. 265, 286 (1986)(citation omitted); see also Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)(stating that "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.")(citations omitted).

**B.     Defendant's Motion to Dismiss is Denied**

Defendant claims that the Complaint fails to state a false advertising claim upon which relief can be granted against her under Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52. Defendant contends that to prove a violation of the FTC Act, the FTC must establish that Defendant

disseminated or caused to be disseminated a false advertisement and thereby engaged in unfair or deceptive acts or practices in or affecting commerce. Def.'s Br. at 7 (citing 15 U.S.C. §§ 45(a), 52(a)).

### 1.     *License Agreement as a Basis for Liability*

Defendant claims that the FTC cannot impose liability based upon the License Agreements between RTC and Nutraquest, and RTC and Cytodyne. Def.'s Br. at 7. Defendant contends that while the License Agreement between RTC and Cytodyne provides that Everrich [Cytodyne] "shall be solely responsible at all times for complying with all federal, state and local laws, both statutory and common law, governing the manufacture and sale, including the marketing, of the Product," under Section 6, Everrich [Cytodyne] "shall substantiate all advertising claims by competent and reliable scientific research, and all advertising shall be reviewed prior to release by an advertising substantiation expert." Id. at 8 (citing Chinery Decl., Ex. B, ¶ 6).[1] According to Defendant, Section 12 of the License Agreement provides that RTC has no obligation to review the advertising created

---

[1] "Generally, when conducting such an inquiry, material beyond the pleadings should not be considered." Syncsort Inc. v. Sequential Software, Inc., 50 F. Supp. 2d 318, 325 (D.N.J. 1999) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir.), cert. denied, 510 U.S. 1042 (1994)). "If the claims are based upon undisputably authentic documents expressly relied upon or integral to the pleadings or matters of public record, however, such documents may be considered." Syncsort Inc., 50 F. Supp. 2d at 325 (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426; In Re Westinghouse Sec. Litig., 90 F.3d 696, 707 (3d Cir. 1996); In re Donald Trump Sec. Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993), cert. denied, 510 U.S. 1178 (1994)). "Documents attached to a motion to dismiss must be explicitly relied upon or integral to the complaint or counterclaim of the nonmovant." Syncsort Inc., 50 F. Supp. 2d at 325 (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426 (citations omitted)). "The failure of a nonmovant to attach or cite documents in the complaint or counterclaim does not preclude a review of the texts of such extrinsic documents in conjunction with a motion to dismiss. Syncsort Inc., 50 F. Supp. 2d at 325 (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426).

and disseminated by Cytodyne. Id.; see Chinery Decl., Ex. B, ¶ 12 ("Everrich shall disclose to RTC and RTC shall have the right but not the obligation to disapprove any (a) proposed marketing plan, (b) sales campaign . . . (c) advertising campaign, (d) new product development or (e) the use by Everrich of any trademark on new Product the exercise of which right will not be unreasonably withheld or delayed . . ."). Defendant maintains that the License Agreement distances RTC (and Defendant) even further from the advertising and marketing process, by providing RTC with "no authority at all" to oversee the product marketing created and disseminated by Nutraquest. Def.'s Br. at 8 (citing Chinery Decl., Ex. A, ¶¶ 2.1, 2.3, 6). Further, Defendant claims that it is solely Nutraquest's duty under the License Agreement to market the product. Id.

Defendant contends that "a licensor cannot ordinarily be held liable for the conduct of its licensee, and therefore, an officer of a licensor clearly cannot be held personally liable for the conduct of a third party licensee." Def.'s Br. at 8 (citing Maruho Co. v. Miles, Inc., 13 F.3d 6, 14 (1st Cir. 1993) ("[W]e have no reason to believe that the simple, unexercised, practical power to influence a negotiation could, by itself, create an agency, or joint venture (or enterprise)."); id. (citing Patterson v. Central Mills, Inc., 112 F.Supp. 2d 681, 692 (D. Ohio 2000) ("Numerous courts have held that a trademark licensor – who does nothing more than permit the use of its trademark – is not liable in tort for potential defects in the final product")).

The FTC, conversely, claims Defendant is individually liable as a corporate officer for the Xenadrine EFX advertising under both Sections 5 and 12 of the FTC Act. FTC's Br. at 17. Section 5 declares unlawful "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). An act or practice is deceptive under Section 5 if it involves a material representation or omission that is likely to mislead consumers, acting reasonably under the circumstances, to their

8

detriment. Id. (citing FTC v. Pantron I Corp., 33 F.3d 1088, 1095 (9th Cir. 1994); In re Nat'l Credit Mgmt. Group, LLC, 21 F.Supp. 2d 424, 441 (D.N.J. 1998)). Section 12 makes it unlawful to "disseminate or cause to be disseminated, any false advertisement" to induce the purchase of "foods, drugs, devices or cosmetics." 15 U.S.C. § 52.

      The FTC claims that an officer may be individually liable for corporate practices under the FTC Act if the corporate practices were misrepresentations or omissions of a kind usually relied on by reasonably prudent persons and consumer injury resulted. FTC's Br. at 17 (citing FTC v. Amy Travel Service, Inc., 875 F.2d 564, 573 (7th Cir. 1989)). The FTC states that the underlying principle of individual liability for corporate conduct is "a belief that 'one may not enjoy the benefits of fraudulent activity and then insulate one's self from liability by contending that one did not participate directly in the fraudulent practices.'" FTC's Br. at 17 (quoting Amy Travel, 875 F.2d at 574). According to the FTC, most jurisdictions have two additional requirements beyond corporate liability before a corporate officer can be held individually liable for corporate conduct. FTC's Br. at 18. The individual defendant must participate directly in or have the authority to control the acts or practices of the corporate defendants, and the individual defendant must have some actual or constructive knowledge of those acts or practices. Id. (citing Amy Travel, 875 F.2d at 573). In this district, the FTC cites two cases that follow this approach and hold that individual liability for corporate acts requires a finding than an individual:

> (1) directly participated in the violative actions, (2) played a part in controlling, directing or formulating the policies and practices of the company which violate Section 5, or (3) [had] the authority to control the actions of other individuals combined with the actual or constructive knowledge that those individuals were committing misrepresentations.

9

In re Nat'l Credit Mgmt. Group, LLC, 21 F.Supp. 2d at 461; FTC v. Nat'l Invention Services, No. 97-3459, 1997 U.S. Dist. LEXIS 16777, at *12-13 (D.N.J. Aug. 11, 1997).  The FTC also notes that whether an individual "participated in or had authority to control" corporate acts can be determined by a combination of fact and inference.  FTC's Br. at 18 (citing Amy Travel, 875 F.2d at 573-74 ("Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer.")).

The FTC contends that even if Defendant was not involved in creating, disseminating or reviewing any Xenadrine EFX advertising, she can still be held liable for corporate acts because an officer's liability is not defined so narrowly under the FTC Act.  FTC's Br. at 19.  The FTC claims that under FTC case law, actual knowledge or intent per se is not a necessary element for individual liability of a corporate officer.  Id. (citing Amy Travel, 875 F.2d at 573).  Rather, the FTC need only show that the corporate officer should have known or been aware of the misrepresentations.  Id. (citing Amy Travel, 875 F.2d at 574).  The knowledge requirement may be fulfilled by showing that the corporate officer had "actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth."  Id. (citing Amy Travel, 875 F.2d at 574).

> **2.    *The Allegations in the Complaint are Sufficient to State a Possible Cause of Action Against Defendant***

Defendant claims that the FTC cannot establish individual liability based solely on Defendant's role as a corporate officer, and cannot prove that Defendant had any knowledge of or participated in the dissemination of the advertising in question.  However, the well settled standard for motions under Rule 12(b)(6), set forth above, frames the issue as not whether Plaintiff will

ultimately prevail, but whether it is entitled to offer evidence to support its claims.

When deciding a motion to dismiss, the Court must view all well-pleaded allegations as true, and view them in the light most favorable to plaintiff. An individual may be held liable under the FTC Act for "corporate practices if the FTC first can prove the corporate practices were misrepresentations or omissions of a kind usually relied on by reasonably prudent persons and that consumer injury resulted." Amy Travel, 875 F.2d at 573 (citing FTC v. Kitco of Nevada, Inc., 612 F. Supp. 1282, 1293-94 (D.Minn. 1985)). Once corporate liability is established, the FTC must demonstrate that "the individual defendants participated directly in the practices or acts or had authority to control them." Id. (citing Kitco, 612 F. Supp. at 1292). "Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." Id. (citing Kitco, 612 F. Supp. at 1292; see, e.g., Consumer Sales Corp. v. FTC, 198 F.2d 404, 408 (2d Cir. 1952)). Once this is established, the FTC must then show that the individual had some knowledge of the practices. Amy Travel, 875 F.2d at 573.

While the FTC must establish that the Defendant had or should have had knowledge or awareness of the misrepresentations, that knowledge requirement may be satisfied by showing that the individual had "actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud with an intentional avoidance of the truth." Id. at 574 (quoting Kitco, 612 F.Supp. At 1292; see also International Diamond, 1983-2 Trade Cas. (CCH) at 69,707); FTC v. Check Investors, Inc., No. 03-2115, 2003 U.S. Dist. LEXIS 26941, 44-45 (D.N.J. July 30, 2003)). In addition, the "degree of participation in business affairs is probative of knowledge." Amy Travel, 875 F.2d at 574 (quoting

11

International Diamond, 1983-2 Trade Cas. (CCH) at 69,707-708)).

In this matter, the FTC alleges that Defendant, as a corporate officer of Nutraquest, which created and disseminated the initial Xenadrine EFX advertising, and as a corporate officer of RTC, which possessed the intellectual property and provided licenses for the product, could have had the requisite knowledge of the advertising to subject her to liability under the FTC Act.  The issue raised in this motion to dismiss is whether RTC, by virtue of its Xenadrine EFX licenses and related conduct with regard to Nutraquest and Cytodyne, can be liable under the FTC Act for the Xenadrine EFX advertising disseminated by its licensees.  FTC's Br. at 24.  According to RTC's License Agreement with Cytodyne, RTC can review Cytodyne's advertising and marketing of the Xenadrine EFX product.  Chinery Decl., Ex. B, ¶ 12.  It is possible that this relationship could have involved Defendant's awareness of the advertising, particularly due to her position with both Nutraquest and RTC.

The FTC, at this stage, is not required to prove its allegations, rather, to state a claim upon which relief could be granted.  The Court is satisfied that it has met its burden.  According to FTC case law, it is possible for a corporate officer to be held individually liable for the misrepresentations of her company.  Amy Travel, 875 F.2d 564.  While Defendant claims that a licensee can never be held personally liable, that is not necessarily the case.  Defendant claims that her position at RTC and Nutraquest were ministerial in nature, however, that determination is more appropriate for a motion for summary judgment and the Court will not address that issue as part of this motion to dismiss.  According to the FTC, the "plain language of RTC's license with Cytodyne creates the possibility of advertising review, and RTC's later assertion of the right to review Cytodyne's marketing and advertising in accordance with the license terms suggest that the course of dealing

between RTC and its licensees may indeed have involved RTC's awareness and perhaps approval of Cytodyne's Xenadrine EFX advertising." FTC's Br. at 25.

Based on the standard for finding individual liability under the FTC Act, this Court concludes that the FTC has set forth facts, which proven to be true, could establish a claim for relief. Accordingly, Defendant's motion to dismiss is denied.

### 3. *Defendant's Argument that She Cannot be Held Liable under the Common Business Enterprise Doctrine is Flawed*

Defendant contends that the Complaint sought to hold Robert Chinery, RTC and Defendant jointly and severally liable as a "common business enterprise." Def.'s Br. at 11 (citing Compl., ¶ 8). Defendant states that the presumed basis for the charge in Paragraph 8 of the Complaint is that when "corporate entities operate in common enterprise, each may be held liable for the deceptive acts and practices of the others." Def.'s Br. at 11 (quoting FTC v. Think Achievement Corp., 144 F.Supp. 2d 993 (N.D. Ind. 2000)). Thus, Defendant argues, to meet the pleading requirements of the common enterprise doctrine, at least one of the alleged direct violators of the Act (here Nutraquest or Cytodyne) must be part of the purported enterprise for the other members to be held liable. Defendant claims that since it was not alleged that she was part of an enterprise with Nutraquest or Cytodyne, this allegation fails. Def.'s Br. at 11.

The FTC addresses this argument by stating that while Paragraph 8 of the Complaint asserts that the Chinerys and RTC operated a common business enterprise, that allegation does not create an independent standard for imposing liability under the FTC Act or otherwise change the case or the allegations against Defendant. FTC's Br. at 20, fn. 11. The FTC contends that the "individuals are the linchpins central to that enterprise, and that enterprise provides one of several foundations

13

for a finding that deceptive practices occurred for which individual liability can attach." Id. (citing Think Achievement Corp., 144 F.Supp. 2d at 1011). The FTC claims that once it establishes that the corporate entities, acting alone or as part of a common enterprise, violated the FTC Act, then Defendant, as an officer of Nutraquest and RTC, is jointly and severally liable under the FTC Act if the FTC establishes that she had the requisite knowledge under the appropriate legal standard as discussed above. Id.

Accordingly, this Court does not find that this allegation is a separate cause of action that may be determined as part of a motion to dismiss, and is not a basis for dismissal of this Complaint.

### 4. *Defendant Claims that Corporate Status Alone is Not a Basis for Individual Liability for a Violation of the FTC Act*

Defendant claims that the FTC also bases its claims of individual liability on the fact that Defendant was a managing member of RTC and an officer of Nutraquest. Def.'s Br. at 14 (citing Compl., ¶ 7). Defendant contends that corporate status alone is insufficient to support a finding of individual liability under the FTC Act. Def.'s Br. at 14 (citing Coro, Inc. v. Federal Trade Commission, 338 F.2d 149 (1st Cir. 1964)). The FTC, however, contends that Defendant's reliance on Coro is misplaced, as most jurisdictions impose two additional requirements beyond corporate liability before a corporate officer can be held individually liable for corporate conduct. FTC's Br. at 18, fn. 9. The FTC maintains that it is not basing Defendant's individual liability solely on her status as an officer of Nutraquest and RTC. Id. Further, the FTC contends that in Coro, there was no showing that the president of a large publicly traded company had any awareness of the practices at issue. Id. According to the FTC, the facts in Coro are very different than those in this matter.

As noted above, when determining a motion to dismiss, the Court may only take into account the allegations as set forth in the Complaint. Taking the facts as alleged in the Complaint as true, it is possible that a cause of action against Defendant for individual liability could be established by the FTC. Individual liability may be assessed against a corporate officer if the facts show the requisite knowledge. However, at this stage is it not necessary for the FTC to prove its allegations, rather, it must allege claims that could, if proven, establish claims against Defendant. As such, facts that may have been uncovered thus far regarding Defendant's knowledge of or involvement with the advertising and marketing of Xenadrine EFX will not be considered as part of this motion to dismiss, but rather, may be properly considered on a motion for summary judgment. Consequently, Defendant's contention that the Complaint must be dismissed based on Defendant's status as a corporate officer is without merit.

### C.     The Motion for Summary Judgment is Denied as Premature

In addition to its opposition to Defendant's motion to dismiss, or in the alternative, for summary judgment, the FTC submitted the Declaration of Peter B. Miller in Support of Discovery Pursuant to Fed. R. Civ. P. 56(f). (Docket No. 21). The FTC asks this Court to permit further discovery before a motion for summary judgement is decided. This Court is inclined to grant the FTC's request for formal discovery in this matter.

The FTC filed an affidavit pursuant to Fed. R. Civ. P. 56(f) identifying "with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." Bradley v. United States, 299 F.3d 197, 206-207 (3d Cir. 2002) (quoting St. Surin v. Virgin Islands Daily News, Inc., 21 F.3d 1309, 1314 (3d Cir. 1994) (citation and internal quotations omitted)). In the 56(f) declaration, the FTC states that from September 26,

15

2005 until at least February 15, 2007, counsel for the FTC and for Defendant focused their efforts on Court-ordered mediation and on settlement discussions. Rule 56(f) Dec., ¶ 7. Because of these efforts, the FTC claims that it has not yet conducted formal discovery in this case and that Defendant has not yet answered the Complaint. Id. According to the FTC, the evidence currently available to it that it relied upon in its Opposition to the motion to dismiss/motion for summary judgment consists almost entirely of information that the FTC obtained during its pre-complaint investigation, including information obtained from other proceedings involving the defendants to which the FTC was not a party. Id., ¶ 8. In September 2003, the FTC sent civil investigatory demands ("CIDS") to Robert Chinery, Nutraquest, Cytodyne and Evergood Products Corp., but not to Tracy Chinery or RTC. Id. The FTC claims that those CIDS focused on advertising for Xenadrine EFX and two other products and sought information regarding advertisements disseminated, advertisement claim substantiation, marketing documents, documents regarding endorsers, consumer complaints and documents relating to other litigation and proceedings. Id.

The FTC further contends that during the pre-complaint investigation, no investigational hearings were conducted and no formal testimony was taken. Id., ¶ 9. The FTC claims that there were disputes regarding the scope of the CIDS and the FTC did not seek all available information relating to this case. Id. Therefore, the FTC submits that the CIDS and the information received in response thereto do not fully address the issues raised by Defendant's current motion for summary judgment. Id. The FTC contends that no formal discovery has been conducted in this matter. Id., ¶ 7, 11. The FTC asks this Court to permit it to serve document requests, requests for admissions, interrogatories and to conduct depositions regarding Defendant's involvement, communications, awareness and interactions relating to the advertisement and marketing of Xenadrine EFX.

With respect to her motion for summary judgment, Defendant argues that summary judgment is appropriate at this stage because the parties have already engaged in extensive discovery in related proceedings. Defendant argues that the factual record established in the related proceedings is sufficiently developed for summary judgment purposes, as evidenced by the FTC's lengthy Rule 56.1 statement of facts.

The Court agrees with the FTC that Defendant's motion for summary judgment should be denied as premature because the parties have not engaged in formal discovery in this matter. The parties are directed to conduct discovery as outlined in the FTC's Rule 56(f) submission. A motion for summary judgment may be filed at such time as discovery has concluded and this Court is presented with a complete record of these proceedings. The parties are directed to confer with the Magistrate Judge in order to establish a discovery plan. Consequently, the motion for summary judgment is denied without prejudice and the parties are directed to conduct discovery before refiling, if so desired.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is denied. The motion for summary judgment is also denied without prejudice, and the parties are directed to complete discovery. An appropriate form of order accompanies this Memorandum Opinion.

Dated: July 5, 2007

                                                    s/Garrett E. Brown, Jr.
                                                  GARRETT E. BROWN, JR., U.S.D.J.