NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION | : : : | Civ. No. 05-3460 (GEB) |
| Plaintiff, | : : | **MEMORANDUM OPINION** |
| v. | : : |  |
| TRACY A. CHINERY et al., | : : |  |
| Defendants. | : : |  |

**BROWN, Chief District Judge**

This matter comes before the Court upon the motion for summary judgment of Defendant Tracy A. Chinery ("Defendant") [Docket # 52]. Plaintiff the Federal Trade Commission ("FTC") opposes Defendant's present motion [#54]. The Court has reviewed the parties' submissions and decided this motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will deny Defendant's motion for summary judgment.

**I.   BACKGROUND**

   **A.  Basic Undisputed Facts**

On July 11, 2005, the FTC filed a complaint that alleges Defendants Robert Chinery, Jr., Tracy A. Chinery, and RTC Research and Development, LLC ("RTC") violated Sections 5(a) and 12 of the Federal Trade Commission Act ("FTC Act") while promoting Xenadrine EFX, a dietary supplement marketed for weight loss. (Compl.) [#1]  Briefly summarized, the FTC claims that the various defendants are liable for the dissemination of allegedly false advertisements for Xenadrine EFX. (*Id.*)  Defendants Robert and Tracy Chinery have been

married at all times relevant to this litigation.  RTC is a limited liability corporation that owns the intellectual property rights to Xenadrine EFX, the product at issue in this case.  (Def.'s R. 56.1 at ¶ 2; Pl.'s R. 56.1 Resp. at ¶ 2.) [# 52, 54]  Tracy Chinery owns an 80% interest in RTC.  (Def.'s R. 56.1 at ¶ 14; Pl.'s R. 56.1 Resp. at ¶ 14.) [# 52, 54]  The remaining 20% ownership interest in RTC is held in trust for the Chinery's children, and Tracy Chinery controls that trust.  (*Id.*)  It is undisputed that Robert Chinery has no direct ownership interest in RTC.  (Def.'s R. 56.1 at ¶ 17; Pl.'s R. 56.1 Resp. at ¶ 17.) [# 52, 54]

As noted, RTC owns the intellectual property rights to the purported weight-loss product Xenadrine EFX.  During the time period relevant to this litigation, two different entities marketed Xenadrine EFX on behalf of RTC: Nutraquest and Cytodyne, LLC.  (Def.'s R. 56.1 at ¶ 2; Pl.'s R. 56.1 Resp. at ¶ 2.) [# 52, 54]  Initially, Xenadrine EFX was marketed by Nutraquest, an entity of which Robert Chinery was "chief officer" and 100% shareowner.  (Def.'s R. 56.1 at ¶ 12; Pl.'s R. 56.1 Resp. at ¶ 12.) [# 52, 54]  Tracy Chinery was a Vice President and Corporate Secretary of Nutraquest, and performed various corporate functions in those capacities.  (Def.'s R. 56.1 at ¶ 22; Pl.'s R. 56.1 Resp. at ¶ 22.) [# 52, 54]

Nutraquest ceased marketing Xenadrine EFX on May 23, 2003, the date RTC ratified a License and Supply Agreement with Cytodyne, LLC, an entity that is primarily owned by persons other than the Chinerys.  (Def.'s R. 56.1 at ¶ 6; Pl.'s R. 56.1 Resp. at ¶ 6.) [# 52, 54]  RTC granted Cytodyne, LLC the exclusive worldwide license to "further develop, manufacture, have manufactured, use, sell and otherwise commercially exploit the rights: to Xenadrine EFX." (*Id.*)  Critically, the License and Supply Agreement also provided for the possibility of limited oversight by RTC of Cytodyne, LLC's marketing of Xenadrine EFX, as follows:

> [Cytodyne, LLC] shall disclose to RTC and RTC shall have the right but not the obligation to disapprove any (a) proposed marketing plan, (b) sales campaign (including new customers approvals, sales incentive, discount and rebate programs that effect net revenue from customers and wholesale price adjustments), (c) advertising campaign, (d) new product development or (e) the use by [Cytodyne, LLC] of any trademark on new product the exercise of which right will not be unreasonably withheld or delayed, and (x) in the case of sales campaigns RTC shall respond within 48 hours to any request from [Cytodyne, LLC] and if no response is received it shall be deemed a disapproval[.]

(Def.'s Mot. Br. At 6.) [# 52]

Ten specific advertisements for Xenadrine EFX that were disseminated by Nutraquest and Cytodyne during their respective relationships with RTC form the basis of the FTC's complaint. (Compl.) [#1] Those advertisements, which are assumed to be actionable for the purposes of this motion, essentially claim that users of Xenadrine EFX experienced significant, rapid weight-loss without increased exercise or an altered diet. (*Id.*) The FTC's complaint alleges that the advertisements at issue violated the FTC Act in the following three ways: (1) the ads contained representations that were not substantiated; (2) the ads represented, expressly or impliedly, that the results shown were achieved solely through the use of Xenadrine EFX; (3) the ads failed to disclose that the consumer endorsers were paid for endorsing Xenadrine EFX. (Compl. Counts 1-3.) [#1] The FTC asserts that each of these representations constitutes a "deceptive practice," resulting in a "false advertisement," and therefore violates the Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52. (*Id.*) The instant motion arises from the FTC's attempt to hold Defendant Tracy Chinery personally liable for the alleged FTC Act violations noted.

### B. Procedural History

The procedural posture of this case has changed significantly in the nearly four years since the FTC filed its complaint. On September 26, 2005, the Court referred this case to mediation, and stayed further litigation in the case until mediation concluded [# 9, 14]. On December 26, 2006, after mediation had concluded, the Court entered the Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief as to Robert Chinery and RTC Research & Development, LLC. ("RC/RTC Settlement) [# 7] As a result, the only remaining defendant is Tracy Chinery.

On February 28, 2007, this Court entered an order that vacated the stay for the limited purpose of allowing Defendant to file a dispositive motion. (Consent Order Vacating Stay, Exhibit A, Stipulation Regarding Litigation and Settlement Process ("Stipulation"), ¶ 6) [# 8]. According to the Stipulation:

> [t]he FTC and Tracy Chinery have further agreed that, solely for purposes of Tracy Chinery's Motion [the present motion to dismiss/motion for summary judgment] only, it will be assumed, but in no way conceded by Tracy Chinery or by any other party to this Stipulation, that the advertising referenced in the Complaint is actionable; and the sole issue to be heard and determined by the Court is whether Tracy Chinery, under the facts and law relating to her involvement, could be held personally and individually liable for any of that advertising.

(Stipulation, ¶ 4.) Further, the Stipulation states that "[t]he FTC shall have the right to move to conduct discovery in accordance with the Rules with regard to any and all factual issues raised by Tracy Chinery's Motion, and Tracy Chinery, in such event, shall have the right to conduct discovery with respect to all factual issues raised by the FTC." (*Id.*, at ¶ 6, b.) The Stipulation also addresses the appeal rights of the parties regarding this motion, specifically that all parties waive their right to appeal regardless of the disposition of the motion. (*Id.*, at ¶ 6, c, i-ii.) If the

FTC ultimately prevails, it will not recover any money from Defendant, rather, she must sign a final settlement agreement on the same terms as those previously entered by Robert Chinery and RTC. (*Id.*, at ¶ 6, c, ii.)

On March 7, 2007, as contemplated in the Stipulation, Defendant filed a motion to dismiss the FTC's complaint, or in the alternative, for summary judgment on all of the FTC's claims [# 19]. In that motion, Defendant argued on various grounds that the FTC's claim that she should be held individually liable for the alleged violations of the FTC Act were untenable as a matter of law. (*Id.*) The FTC opposed Defendant's motion, refuted Defendant's arguments, and asserted that it was entitled to conduct discovery on its claims [#21]. On July 5, 2007, the Court denied Defendant's motion after concluding: 1) that the FTC's claims should not be dismissed; and 2) that Defendant's summary judgment motion was premature as the FTC was entitled to conduct discovery. (GEB Mem. Op. 7/5/07) [# 24]

On September 2, 2008, after discovery concluded, Defendant filed the instant renewed motion for summary judgment on all of the FTC's claims [# 52]. In her submissions, Defendant argues that, despite its voluminous discovery demands, the FTC has failed to uncover any evidence that supports holding Defendant individually liable in this case. (Def.'s Mot. Br.; Def.'s Reply Br.) [# 52, 58] The FTC opposes Defendant's motion for summary judgment, and argues that, at the very least, there are genuine issues of material fact on various critical points that preclude summary judgment in this case. (Pl.'s Opp'n Br.) [# 54] Having reviewed the parties' submissions, the Court concludes that there are genuine issues of material fact present in this case, as discussed more fully below. In light of that conclusion, the Court will deny Defendant's motion.

## II.   DISCUSSION

### A.   Legal Standard

Summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Issues of material fact are genuine only if the evidence presented could allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the nonmoving party. *See Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987). However, the nonmoving party "cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact" sufficient to defeat summary judgment. *Pastore v. Bell Tel. Co.*, 24 F.3d 508, 511 (3d Cir. 1994); see also Fed. R. Civ. P. 56(e) (nonmoving party's response must contain specific facts showing that there is a genuine issue for trial.)

### B.   Application

Defendant argues that she should not be held individually liable for any FTC Act violations that arose from the marketing of Xenadrine EFX because the FTC has not demonstrated that Defendant was either responsible for the ads in question, or that she had knowledge of them.  (Def.'s Mot. Br.; Def.'s Reply Br.) [# 52, 58]   Conversely, the FTC argues that the facts adduced during discovery either prove that Defendant was responsible for the ads and did know about them, or at the very least, that genuine issues of material fact exist on each of those points so that a reasonable jury could find in the FTC's favor.  (Pl.'s Opp'n Br.) [#54]   The

Court agrees with the FTC that there are sufficient material facts in dispute to render summary judgment inappropriate.

On July 5, 2007, the Court denied Defendant's motion to dismiss the FTC's complaint, or in the alternative, for summary judgment on all of the FTC's claims [# 19]. In doing so, the Court stated:

> An individual may be held liable under the FTC Act for "corporate practices if the FTC first can prove the corporate practices were misrepresentations or omissions of a kind usually relied on by reasonably prudent persons and that consumer injury resulted." Amy Travel, 875 F.2d at 573 (citing FTC v. Kitco of Nevada, Inc., 612 F. Supp. 1282, 1293-94 (D.Minn. 1985)). Once corporate liability is established, the FTC must demonstrate that "the individual defendants participated directly in the practices or acts or had authority to control them." Id. (citing Kitco, 612 F. Supp. at 1292). "Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." Id. (citing Kitco, 612 F. Supp. at 1292; see, e.g., Consumer Sales Corp. v. FTC, 198 F.2d 404, 408 (2d Cir. 1952)). Once this is established, the FTC must then show that the individual had some knowledge of the practices. Amy Travel, 875 F.2d at 573.
>
> While the FTC must establish that the Defendant had or should have had knowledge or awareness of the misrepresentations, that knowledge requirement may be satisfied by showing that the individual had "actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud with an intentional avoidance of the truth." Id. at 574 (quoting Kitco, 612 F.Supp. At 1292; see also International Diamond, 1983-2 Trade Cas. (CCH) at 69,707); FTC v. Check Investors, Inc., No. 03-2115, 2003 U.S. Dist. LEXIS 26941, 44-45 (D.N.J. July 30, 2003)). In addition, the "degree of participation in business affairs is probative of knowledge." Amy Travel, 875 F.2d at 574 (quoting International Diamond, 1983-2 Trade Cas. (CCH) at 69,707-708)).

(GEB Mem. Op. 7/5/07 at 11-12.) [# 24]  In their various submissions, neither party disputes

that the above legal standard is correct, and the Court will apply it here.  After applying the facts of this case to this standard, the Court concludes that there are genuine issues of material fact present in the following three areas that the FTC must establish in order to hold Defendant individually liable in this case: (1) RTC's corporate liability; (2) Defendant's "participation" in, or "authority to control" the marketing/advertising activities at issue; (3) Defendant's "actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud with an intentional avoidance of the truth."

     First, there is a genuine issue of material fact as to whether RTC is liable for the ads at issue.  As noted previously, the License and Supply Agreement ratified by RTC and Cytodyne, LLC on May 23, 2003, provided for the possibility of limited oversight by RTC of Cytodyne, LLC's marketing of Xenadrine EFX.  (Def.'s Mot. Br. At 6.) [# 52]   Indeed, Defendant acknowledges that, on at least one occasion, RTC disapproved of a marketing plan proposed by Cytodyne, LLC.  (Def.'s R. 56.1 at ¶ 21.) [# 52]   Thus, at the very least there is a genuine issue of material fact as to whether RTC can be liable for the FTC Act violations at issue.

     Second, there is a genuine issue of material fact as to whether Defendant participated in, or had the authority to control the advertisements at issue.  It is undisputed that Defendant personally owns 80% of RTC, and controls the trusts that own the remaining 20% of that entity.  (Def.'s R. 56.1 at ¶ 14; Pl.'s R. 56.1 Resp. at ¶ 14.) [# 52, 54]   In her submissions, Defendant refers to herself as a "managing member" of RTC, which she describes as, "an entity whose sole business is to serve as a passive holder of intellectual property rights in the product formula, *to market and sell the Xenadrine EFX product*."(emphasis added)   (Def.'s R. 56.1 at ¶¶ 2, 14.) [#

52] It is undisputed that RTC had the legal authority to disapprove Cytodyne, LLC's marketing proposals for Xenadrine EFX. (Def.'s Mot. Br. At 6.) [# 52] However, the parties do dispute what role, if any, Defendant took regarding RTC's oversight of Cytodyne, LLC's marketing plans for Xenadrine EFX. (Def.'s R. 56.1 at ¶ 12; Pl.'s R. 56.1 Resp. at ¶ 12.) [# 52, 54] Thus, in sum, Defendant is the legal owner and self-described "managing member" of RTC, a small entity whose partial purpose, according to Defendant, was to market and sell Xenadrine EFX. Further, it is undisputed that RTC had the legal authority to disapprove of the advertisements proposed by Cytodyne, LLC. Based on these facts, there is at least a genuine issue of material fact as to whether Defendant participated in or had the authority to control the advertisements at issue.

      Third and finally, there is a genuine issue of material fact as to whether Defendant had "actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud with an intentional avoidance of the truth." The FTC has provided numerous facts, including contracts with personal trainers, and checks to both personal trainers and endorsers signed by Defendant, that evidence her possible knowledge of and involvement with the advertisements at issue. Further, the Court is convinced that a reasonable fact finder, after reviewing all of the facts of this case, could find that Tracy Chinery had the requisite actual or constructive knowledge of the allegedly false advertisements. A summary of the basic undisputed facts plainly support this conclusion. Defendant is the owner of RTC, the small entity that owns the rights to Xenadrine EFX. Defendant was also Vice President and Secretary of Nutraquest, the small entity that created some of the advertisements at issue in this case. Thus, Defendant is either the owner, or a

corporate officer of two small companies whose apparent reason for existence is or was the marketing and sale of Xenadrine EFX.  Further, Cytodyne, LLC, the company that created the remainder of the ads at issue, was contractually obligated to submit its marketing plans for Xenadrine EFX to RTC for review.  Under these circumstances, there is, at the very least, a genuine issue of material fact as to whether Defendant had "actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud with an intentional avoidance of the truth."

### III. CONCLUSION

Genuine issues of material fact exist that preclude summary judgment for Defendant in this case.  An appropriate form of order accompanies this memorandum opinion.

Dated:  March 23, 2009

                                        /s/ Garrett E. Brown, Jr.
                                 GARRETT E. BROWN, JR., U.S.D.J.